*The following opinions were given by the Court:
BROCKENBROUGH, J.,
delivered the opinion of the majority, consisting of Smith, Dade, Saunders, Parker, and himself :
“ The prisoner, who is a citizen of this *190 Commonwealth, has been indicted, tried, and convicted in this Court, for the crime of fe-loniously stealing’ the horse of another citizen of this Commonwealth, in a place beyond the limits of the same, namely in Georgetown, in the District of Columbia. The Act, under which he has been prosecuted, was passed in the year 1786, under the title of an Act “ concerning treasons, felonies, and other offences committed out of the jurisdiction of this Commonwealth;” and was re-enacted in 1792, and has been preserved in our Code until this time. The terms of the Daw, are, that “ all high treasons, misprisions, and concealments of high treason, and other of-fences against this Commonwealth, (except piracies and felonies on the high seas,) committed by any citizen of this commonwealth, in any place out of the jurisdiction of the Courts of Common Law in this Commonwealth5, and all felonies committed by citizen against citizen, in any such place, other than the high seas, shall be enquired into,” &c. in the General Court, in the same manner as “ offences committed within the body of a county,” are triable in the District Court.
The first and main question to be decided is, whether the Act extends to the commission of the crimes enumerated therein in any place without the limits of the commonwealth, or is confined in its operation to such places within the limits of the Commonwealth, as are without the jurisdiction of the Courts of Common Law, if there be any such places. We think it clear 'that the words of the Law admits the first construction. It is undoubtedly true, that a place beyond the limits of the Commonwealth, is, “ a place out of the jurisdiction of the Common Law Courts of this Commonwealth.” The first clause, of the Act applies to the Case of high treasons, &c. and other offences against the Commonwealth. Our Law declaring what shall be treason, had expressly defined, and provided for the punishment of, a species of treason to be committed “elsewhere ” than in the Commonwealth. When, the Law now under discussion then speaks of high treasons committed in any place out of the jurisdiction of the Courts *of Common Law, does it not necessarily extend to those treasons which may be committed out of the Commonwealth ? If it does not, then it fails to provide a Tribunal for the trial of a most important and dangerous species of treasons. A citizen of Virginia may go into Maryland, and there adhere to our enemy, giving him aid and comfort, by supplying him with provisions, with fire arms, and with troops, and yet when he is apprehended in Virginia, he cannot be tried, according to the arguments of the prisoner’s Counsel, in any Court! A punishment is provided for a most heinous crime, which may be committed out of the Commonwealth, and yet no Court provided for the infliction of that punishment! W.e consider it clear, that - according, to the literaLmeaning,, and rational construction of‘the first member’of the section, it confers jurisdiction on this Court to punish treason, when committed out of the State. The next member of the sentence applies to all felonies committed by citizen against citizen, “ in any such place.” To decide whether this clause embraces felonies committed out of the State, it is only necessary to understand what is meant by “such place.” Those words refer to the place spoken of in the first member of the sentence, and as that member applies to treasons committed out of the State, it follows of course, that the second member of the sentence applies to felonies committed out of the State.
So much for the letter of the Law. It will certainly be admitted, that when the words of a Law are clear and unambiguous, no constructions ought to be allowed against their plain meaning, and import, unless the consequences of that plain meaning are such as contravene some paramount Law, or are repugnant to common reason, and natural equity. Courts have justly deprecated the idea of a construction against the words of a Statute, because of an. objection merely to the policy of the Law ; because this naturally leads, if not to the assumption of Legislative powers, at least to the inexecution of those powers. In this Case, it is said, that to extend the jurisdiction of this Court to the crime of the prisoner, would be to give a construction to the Law leading to dangerous consequences, which ought, therefore, to be avoided: that it makes this an act of unusual and extraordinary Legislation, whereas the construction of the prisoner’s Counsel makes the act one of ordinary and beneficial Legislation.
*We will not enquire whether the Law of Nations recognizes the right of a State to punish its own citizens for the commission of crimes either of les® majestatis, or of other dangerous and injurious tendencies, out of its own territorial limits, though it believed that that Law does recognize such right. Nor will we enquire whether the nations of Continental Europe do ever by their Laws punish or protect their own subjects, after they have left their own country.. We have not the means, at present, of knowing their practice. But we do know that in England, from whence we have derived so many of our institutions, laws and customs, it is not thought absurd, nor has it been unusual to enact Statutes by which their subjects are punished for offences committed out of the Realm, and protected against the crimes of their own subjects in foreign countries. Not to speak of the Courts of her Constable and Marshal in the early period of her annals, (a) several Statutes of Henry 8, provide a tribunal for the punishment of treasons, mispri-sions and concealments of treason, and of murder committed without the Realm, (b) Their Courts, too, have frequently enforced those Laws. We are informed by the Crown Law-Writers, that a Mr. Ealing was tried in England, and executed, for the murder of a Mr. Bignell in Sweden ; that one Chambers was indicted for a murder in Spain ; that in *191 1775 a Mr. Rocke was tried for the murder of Mr. Eerguson at the Cape of Good Hope, and that in 1802, Governor Wall was tried and executed for a murder in Goree in Africa. We do not mention these Cases because we approve their policy, but to shew that it has not been uncommon in England to punish extraterritorial offences. But we need not appeal to England for examples of this kind. Our own Raw furnishes a prior example. The 5th section of this very act, (c) which first passed in 1784, provides for the punishment of such of our own citizens as shall go out of the Commonwealth, and shall commit certain crimes on the people of any Christian nation, or Indian tribe in amity with us. Is it surprising that the same spirit which induced the Legislature to punish our citizens for an extra-territorial of-fence against a friend and ally, *should also prompt them to punish such a citizen for aiming a blow at the sovereignty of the State, or for committing a crime against another citizen, although that crime should be committed beyond our limits ? These remarks are intended to prove, that as the words of this Law do require that we should punish a citizen for an offence committed beyond our limits, there is nothing so extravagantly absurd or unusual in it, as to require that we should give to the Law a construction which would destroy the effect of those words. Of the policy of the Law, we cannot permit ourselves to judge, and we see no reason to doubt that the Legislature were authorized by the Constitution to pass the Law. Recent Acts of Legislation afford examples of the punishment of extra-territorial offences. We refer to the Act for the suppression of duelling, and the Act against incestuous marriages, (d)
But it is contended with a great deal of force, that there are many places within the Commonwealth, which were yet without the jurisdiction of the Courts of Common Law thereof. If the Counsel had succeeded in proving this position, most of us would have been willing to have yielded to their construction. They contend that the Chesapeake Bay, and such of its riv.ers, havens and creeks, as are not within the body of any county, were, in the year 1786, at the passage of this Law, out of the jurisdiction of the Courts of Common Law. We have investigated this question with some diligence, and we have arrived at a different conclusion. We are of opinion that in 1786, before the passage of this Act, the General Court, as a Court of Common Law, had entire and complete jurisdiction to try and decide all offences whatever committed on the bay, and its rivers, creeks and harbors, and consequently, that there was no place at that time in the Commonwealth, which was out of the jurisdiction of its Common Law Courts.
It appears, that by an Act of the Colonial Assembly, which passed in 1699, (e) all trea-sons, piracies and felonies committed either on the “ high seas ” or in any “ river, haven, creek or bay, where the Admiral has jurisdiction,” were to be tried as if committed on the land, and the Governor *Was authorised to issue Commissions of Oyer and Terminer to the Judges of Admiralty. This Act is said to have been rendered unnecessary by an Act of the British Parliament, (f) of 11 William 3, which gave jurisdiction to Commissioners of Admiralty appointed under the Great Seal, to try all pira-cies, felonies, and robberies committed on the sea, or in any river, haven, creek, or place where the Admiral has jurisdiction ; and by the 13th section, it appears that the sole jurisdiction was conferred on the Commissioners of the Admiralty to try such offences in the Plantations. That Act was finally made perpetual by 6 George 1, and it appears to have been recognized by our Colonial Legislature in 1748. (g) These regulations continued in force till 1776, and we admit that up to that period, neither the County Courts, nor the General Court, which were the only Courts of Common Law, had jurisdiction to try and determine felonies, &c. committed on the Bay, and such of its waters as were not in the body of a county.
At that period an important change took place. In 1777, the Law passed establishing the General Court, (h) That Court is declared to be one of general jurisdiction, with all Common Law powers, and by the 56th section, it is vested with full power to hear and determine all treasons, murders, felonies, and other crimes and misdemesnors which shall be brought before them. The powers of the Vice Admiral, and of the Royal Commissioners of Admiralty had ceased, by the same authority which abrogated the Royal Government. The Law establishing the General Court, conferred upon it a Common Law authority, co-extensive with the limits of the Commonwealth ; (and some of us are of opinion that the original Common Law jurisdiction belonging to the General Court prior to the passage of the Act of William 3, over the whole territory of the Colony, was remitted to it, on the destruction of the Royal Court of Admiralty,) and the new Admiralty Court being not yet established, the jurisdiction of the General Court to try all treasons and felonies on the bays and rivers, as well as on the land of the Commonwealth, became exclusive. In 1778, the Articles of Confederation were adopted, *by the 9th article of which, the United States were vested with the power of “ appointing Courts for the trial of piracies, and felonies committed on the high seas.” This term did not comprehend, as we suppose, the Chesapeake Bay, which might perhaps be termed a sea, but certainly not the high sea, and the grant of power to Congress, therefore, did not take away the jurisdiction which we suppose was conferred on the General Court, by the before mentioned Law, over the whole territory of the Common - *192 wealth. In 1779, the Legislature of Virginia established the Admiralty Court, and vested it with jurisdiction in all maritime causes, except those “wherein any parties may be accused of capital offences.” Here we will ask why the Legislature of 1776 excluded their new Admiralty Court from all jurisdiction in capital offences, treasons, murders, and all other felonies ? What other reason can be given for that express exclusion, than a knowledge that they had previously conferred that power on the General Court, a Court of Common Law powers ? The men who framed our Constitution, who constituted the first Legislatures under the new order of things, many of them, and especially the Eevisors appointed at that period, were Lawyers of high standing. Notwithstanding the political separation from England, they still clung to the English Common Law with undiminished affection ; they preferred the organization of the Common Law Courts to that of the Admiralty; they knew that the Court of King’s Bench had always claimed to exercise jurisdiction over the narrow seas, and even on the high seas on the coasts, and in these cases their jurisdiction was concurrent with the Admiralty ;(i) and that when the creek, or arm of the sea, was within a county, the Courts of Common Law had, by the Common Law, exclusive jurisdiction. This"knowledge, and opinion, doubtless induced them to confer the power on the Common Law "Court, and to withhold it from the Admiralty.
. When the Admiralty Court Law was passed, is it to be believed that the Legislature intended to leave a residuum of criminal jurisdiction undisposed of ? That residuum, although important in quality, was comparatively small in quantity, Isittobepre-sumed that they could intend to *confer that small residuum on a Special Court of Commissioners to be erected for that purpose? Would they subject themselves to the expense of a new Court, who should have nothing else to do than to try offences committed on the Bay and its waters? Again; can any reason be given why they should leave that residuum undisposed of for seven years ? Although these offences on that Bay and its waters would not be sufficiently numerous to give employment to a Court solely constituted for that purpose, yet they were too important to leave them undisposed of, for any space of time. They knew that murders and robberies might be committed on the Bay as well as on the land, and therefore they would submit them to some Tribunal. Why then did they not provide for them in 1779 ? The answer is obvious. Because they were already provided for in their favorite Court.
We must, therefore, conclude from this view of the distribution of Judicial power, that there was no place in the Commonwealth, which in 1786 was without the jurisdiction of the Courts of Common Law.
It is asked why this awkward expression, “out of - the jurisdiction of the Courts of Common Law,” should have been used, when it was so easy to use the words “out of the Commonwealth.” The reply is, that some writers are more prone than others, to use words of circumlocution : and the writer of the original bill from which this Act was taken, has himself given a glossary on his language, by calling it a bill concerning trea-sons, felonies, &c. committed “out of the jurisdiction of this Commonwealth,” which title has been continued in the Act when originally passed, and in 1792, when it was reenacted by another Legislature It is true, that the title is no part of the law, and when plainly repugnant to the enacting clauses, has no weight, but it may be resorted to when it agrees with the enacting clause, or to remove an ambiguity. Another awkward expression in this Law, is in the conclusion. The person convict shall be subject to the same penalties, &c. as if the offence was done “in the body of a county.” Why not say in the body of the State? Very little weight is attached to this expression, when it is seen that by the Sth section, which clearly applies to offences, out of the State, the same expression is used ; and it is also used in the English Statutes for punishing offences out of the Realm.
*But it has been asked with considerable force, what country gives the definition of the offence? Is the act done to be a felony here, or a felony in the place where committed ? The ready reply is, that the act is to be a felony in Virginia, of which the party is a citizen. That term is technical, and so are the terms murder and treason, used in the English Statutes. What may be murder in England, may not be murder in Sweden, or Spain ; and yet an Englishman who kills, with malice aforethought, an Englishman, in Sweden, is adjudged by the»English Law to be guilty of murder.
There is, however, a phrase in the Act, which proves that the offences provided against, are those which occur out of the State. It is that which confines the felonies to such as may be committed by “ citizen against citizen.” If the intention of Law was to provide a Tribunal for the punishment of offences committed on the Chesapeake Bay and its waters, why should it limit its protection to citizens only ? Was it not equally within the scope of its duty to punish a felony committed there by an alien on a citizen, or by a citizen against a foreigner, as to punish felonies by citizen, against citizen ? The Legislature surely would not provide for the punishment of one class of felonies committed within its territory, and leave another class, equally dangerous, and injurious, unprovided for; it would not punish a citizen, and leave a subject of another Sovereign to go free. It is argued, indeed, that the term citizen means free born person, and that it was used to give the Courts a jurisdiction over free persons, in contradistinction to slaves. If this were so, it still leaves out an important class of cases. A citizen might go on the Chesapeake, and drown, or otherwise murder, a slave, and yet this Law would erect no Tribunal for his trial. But the term is not *193 susceptible of that meaning-, according to our apprehension. The word is used by Vattel, as applying to the member of a Sovereignty, and in the first clause of this Act, the expression is used, “citizen of , this Commonwealth,” and the word “ citizen,” used immediately after, naturally and necessarily imports a member of the same Sovereignty. If the place be out of the territorial limits of the Commonwealth, these words are perfectly intelligible, and the Legislature is guilty of no inconsistency, or omission. A felony committed upon a citizen of Virginia, by another citizen, though out of her limits, will be *redressed by the State, because her protection extends to the injured citizen wherever he goes, but an injured foreigner is not entitled to her protection after he quits her Territory, and the guilty citizen will be punished in such case, when a guilty foreigner would not be, because after he quits the Territory, he is no longer subject to our Laws. If the place intended by the Law be out of the Commonwealth, then both the criminal and the sufferer must be citizens ; but, if the place be within the Commonwealth, then it is not necessary that either of them should be citizens.
It may not be improper to remark, that Judge Tucker, who practised as a Lawyer in the General Court about that time, and who was afterwards a member thereof, in his Treatise on the Courts of Virginia, (k) speaks of this Law as extending to felonies committed out of the State. We do not quote it as authority, but as a proof that our construction is not novel, and that we are supported by its cotemporaneous exposition.
It has been said, that the last Legislature have given a construction to this Act different from that which we have given. We are well pleased that the Legislature, in changing essentially the terms of this Law, have rendered it very plain in future cases. They have made of it an entirely new Law. (l) That change affords no proof that they interpreted the old Law as the prisoner’s Counsel have done. If they had so interpreted it, why did they change it ? It only proves that they are opposed to the policy of the Legislative Law according to our construction. But the Legislative construction in 1792, obviously accords with our own. By the third section of the General Court Law of that year, (see 1 Rev. Code of 1792, ch. 65, § 3,) they gave this Court a general residuary jurisdiction over all matters civil as well as criminal, not vested in any other Tribunal. By that Law, this Court was vested with jurisdiction over the the Bay, and its waters, not within the body of that county, and it became unnecessary to pass any other Law on the subject; but in a few days afterwards, they passed the Act now under consideration, and it may thence be inferred that they knew they were providing for a class of Cases, not included in the said Law.
*On the whole matter, we are of opinion, that there should be judgment against the prisoner.
HOLMES, J.,
delivered the opinion of the minority, consisting of Allen, Summers, and himself:
The Judges being divided in opinion, as to^ the judgment which ought to be rendered on' the verdict found in this Case, the minority have deputed me to state the grounds on which they hold the opinion that the General Court has not jurisdiction over the prisoner’s case. Whilst it is admitted that it is competent for a State to legislate rules of conduct for its citizens while resident beyond its territorial limits, yet this extraordinary Legislation is never exercised but in extreme, and necessary cases, involving the peace and tranquillity of the State ; such, for example, (in our situation,) as provoking Indian hostility, or committing depredations on neigh-bouring Christian nations in amity with the State : these are legitimate objects of Legislation, and are provided for by one of the sections of the Law under consideration ; and unless the seventh section, which it is supposed gives jurisdiction to the General Court over the prisoner’s case, so clearly provides for the punishment of a felony committed beyond the limits of the State, it is fair to presume that the Legislature did not intend this extraordinary Legislation, especially as no good reason can be given why they should, but many why they should not: for example, the citizen who commits a felony on another State or Kingdom, is amenable to such State or Kingdom, and the Constitution of the United States provides a remedy to surrender him ; indeed, the Law under consideration provides for surrendering any citizen of this Commonwealth, who commits a crime beyond the limits of the United States, and within the acknowledged jurisdiction of any civilized nation in amity with the United States. If the jurisdiction of trying felonies committed at anyplace out of the Commonwealth, has been conferred on the General Court, it follows, as there is no limit, that felonies committed by one citizen against another, in any part of the world, except piracy, and murder on the high seas, may be tried and punished in the General Court. As before observed, it ought not to be presumed that the Legislature intended to forge trammels for its citizens, by clogging them with the Criminal Law of the State, wherever they might go, at the *same time that it was according to them the right of locomotion, the right of expatriation, the right of trial by a jury of his vicinage, and to call for witnesses in his favor. Suppose a felony to have been committed by one citizen against another, in England, and the culprit flies to Virginia, and is on his trial in the General Court for such felony, is it not a perfect mockery of his Constitutional rights to deny him not only a trial by a jury of his vicinage, but to tell him he may have a subpoena for his witnesses in England! and yet the man may be' innocent, and could prove his innocence, if he could avail himself of his Constitutional privilege to procure his testimony. It is repeated, to guard against misapprehension, *194 that the minority concede the right to the legislature, in cases of strong necessity,-and where crime strikes at the existence of the Government, to depart from the strict words of the Constitution, as to a jury of the vici-nage, but it ought to be confined to those cases only ; nor can the minority perceive the force of the argument, that because the Legislature have, in some instances, as in case of duelling, incestuous marriages, &c.enacted penal sanctions, that it may well be presumed they meant to do so in the Case before the Court: these are cases where the offence originates in the Commonwealth, and is consummated without, and the practice of evading the general Law, made it absolutely necessary to guard against such evasion ; but is there any more necessity for' punishing a citizen for killing another citizen in a foreign country, than if he had killed a subject of that foreign country ? Bor, if it be said, that we shall profit by the example, the answer is, the example is the same in both cases, either hanging, or imprisonment. These remarks are only intended to shew, that if any other rational construction can be placed upon the Law, other than that giving jurisdiction to this Court, it is desirable upon general principles, that such construction should prevail, and it is believed by the minority, that the Law embraces a class of cases entirely different from the'one before the Court. : . i : • : ■ :
In 4 Black. Com. 268, it is laid down, that “the High Court of Admiralty held' before the Lord High Admiral of England, or his Deputy, styled the Judges of the Admiralty, is not only a Court of civil, but also of criminal jurisdiction : this Court hath cognizance of all crimes and offences committed either upon the sea, or on the coasts out of the body, or extent of any English county, and by Stat. 15, *Rich. 2, ch. 2, of death and mayhem happening in great ships being, and hovering in the main stream of great rivers, below the bridges of the same rivers.” A Court of Vice Admiralty existed in this Colony before the Revolution, having cognizance of civil and criminal Cases, but modified by the Statute of William 3, or our Statute, found in 3 Hen. Stat. at Large, p. 178, adding Associate Commissioners to the Admiralty Judges, and as to criminal Cases, converting it into a Court of Oyer and Terminer, but confirming the Admiralty jurisdiction, as always contended for by the Civilians, to extend to rivers, havens, bays, &c. using the emphatic language, “where the Admiral had jurisdiction.” It is admitted on all hands, that until the Revolution, the Admiralty Court had jurisdiction of felonies committed on the Bay : the minority believe exclusive jurisdiction, by reason of the expression in the Statute of William, “sole jurisdiction.” The Law of 1748, defining the jurisdiction of the General Court?• uses as ample terms as the Law of 1777: which it is supposed gives the General Cour: jurisdiction over felonies committed on th■ bay, rivers, &c. and yet, upon a fair construe- : tion, it is believed the Law of 1748 did no< embrace felonies on the Bay. If, however; it be doubtful whether there was a jurisdiction on these waters, in the General Court, concurrent with the Admiralty, in construction we ought to lean against the conclusion of conflicting jurisdiction, especially as the trial cannot proceed without the body of the offender, and if it had been supposed that the General Court had jurisdiction, there would have been no occasion for a modification of the Admiralty Court, nor would the Governor, a Judge of the General Court, have been directed to issue the Commission for the Associates of the Admiralty : this reasoning leads the minority to deny the concurrent jurisdiction of the General Court with the Admiralty, quoad felonies on the bay, rivers, &c.
When the Constitution was formed, the Admiralty Court was preserved, and the Convention adopted the Common Law, and all Statutes of a general nature, made in aid of the Common Law, prior to 4 James 1, together with our own Acts of Assembly, as the future Code of Laws. Then, we adopted the Stat. of Hen. 8, the Stat. of Rich. 2, and our Statute like that of Wm. 3, unless there are some provisions in either in hostility with the Bill of Rights, or Constitution. There is no objection of this sort perceivable *in our own Statute, unless the direction to the Governor to issue the Com- • : : ■ : < ; missions may be such: but it does not follow that, if the Governor could not do this, the Admiralty had lost its local jurisdiction, which had been settled for more than an hundred years, and if so, the Admiralty jurisdiction over felonies on the Bay, &c. continued ’till 1779. Is not this construction fortified by the Act of 1779 taking away its jurisdiction over capital offences ? Can you take away from a Court that which it did not previously possess ? But it is enough for the purpose of proving that the 7th section was intended to provide against felonies committed on the Bay, &c. if a doubt can be raised whether the General Court had that' jurisdiction by virtue of the Act of 1777, for Laws are frequently passed to clear up doubts. It is readily admitted, that the S6th section of that Act, authorising the General Court to try all treasons, murders, and felonies brought before it, will embrace the case of felonies on the Bay ; but it will do more, and embrace the case of a felony committed out of the State, for we have seen that such a felony may be brought before it: this proves too much, and leaves no case for the 7th section to operate on : but it admon-' ishesus of the danger of amplifying jurisdiction, and shews that a comprehensive clause giving jurisdiction, ought to be controlled, so as not to clash with the jurisdiction of other. Courts. If this rule be observed, we come to this conclusion, that the General Court was established as a Court of Common Law ; •that, at the time of. making the Law establishing1 it,' in 1777, the Legislature did not mean to give to it the Admiralty jurisdiction which then belonged to the Court of Admiralty, and when that Court was, by the Act of 1779, deprived of part of its Admiralty jurisdiction, to wit: capital offences corn- *195 mitted on the sea, bay, rivers, &c. it is remarkable that the bill which is believed to be the foundation of the haw in question was reported at the same Session of 1779, and contains the same language, viz : “out of the jurisdiction of the Courts of Common Ivaw,” and, moreover, it was an attempt to form a Special Court of Oyer and Terminer, such as the Admiralty had been, but which was unnecessary now as an appendage to the Admiralty, since jurisdiction over capital offences was taken from it, and the jurisdiction of piracy and murder transferred to the Congress of the United States, to establish the mode of trial, and the Court. It was then, this abandoned Adtni-ralty * jurisdiction which it was intended to be provided for, and there were offences committed on the bay, rivers, havens, &c. and out of the jurisdiction of the Courts of Common Law, because within the jurisdiction theretofore of the Admiralty. It is strange indeed, passing strange, and not to be reconciled with ordinary phraseology, that if the Legislature were about conferring jurisdiction on the General Court, of felonies committed out of the State, they should not have said so in terms not to be mistaken, when in 1792 they were embodying all these Laws of extraordinary Legislation, and where the offence was clearly one out of the State, they have not hesitated to say so.
Another important circumstance in the legal history of the time when the Law was adopted, is the Compact between Maryland and Virginia, made in 1785, and passed into a Law 3d January, 1786, by which it is provided that all crimes, piracies, and offences committed on that part of the Chesapeake Bay, which lies within the limits of Virginia, or that part of the said Bay where the line of division from the South point of Potowmac river, then called Smith’s Point, to Watkins’s Point, near the mouth of Pocomoke, may be doubtful, or where the line of division between the two States may be doubtful upon the river Pocomoke, by any persons not citizens of the Commonwealth of Virginia, against the citizens of Maryland, shall be tried in Maryland, and crimes committed in the same doubtful place, by any persons not citizens of Maryland, against a citizen of Virginia, shall be tried in the Courts of the Commonwealth of Virginia, having legal cognizance of such offences ; and so the Compact proceeds to enumerate various other cases of citizens of Virginia against citizens of Maryland, but omits any provision as to felonies committed by one citizen against another. The language of this Compact in such term?, in some measure, reconciles us to the seemingly awkward expression of felonies committed by one citizen against another. It will be found that the Compact was an act cotemporaneous, or most probably, preceding by a few days, the Law in question : it provided that a piracy, crime, or offence, committed any where on the Bay, between the Maryland line and the Capes, by any person not a citizen of Virginia, against a citizen of Maryland, should be tried in a Maryland Court: it ceases'then to be a matter of astonishment, that when the Legislature had made provision for the trial of all offences which *might be committed on the Chesapeake Bay, except that by citizen against citizen, and were about to establish a Tribunal to try such offences as could not be reached by the jurisdiction of the Common Law Courts ; in other words, having made an arrangement for keeping the peace between our citizens and their neighbours of Maryland, as well as foreigners, they should have assigned to this Tribunal the case of offences by citizen against citizen. But it may be said, that inasmuch as the first part of the 7th section provides for all high treasons, misprisions, and concealments of treason, and other offences against this Commonwealth, (except piracies and felonies on the high seas,) committed by any citizen of this Commonwealth, in any place out of the jurisdiction of the Courts of Common Law in this Commonwealth, it was unnecessary to add, “and felonies committed by citizen against citizen because such offence is one against the Commonwealth ; and if committed within the Commonwealth, already provided for in the first clause, and, therefore, to give effect to the second provision, you must suppose tint the felony of citizen against citizen, must be committed out of the Commonwealth. It is admitted, that there is much force in this conclusion ; but it is a rule of construction that provisions of the same Statute are to be so construed as to be consistent with each other, and if the reasoning be correct, that because the first part of the 7th. section having provided for the case of felonies committed by one citizen against another, and, therefore, the second provision must mean something else, I answer, that the 4th section of this same Statute provides, that if a citizen or inhabitant of this Commonwealth commits any crime beyond the limits of the United States ; mark the words any crime ; for which the Law of Nations, or Treaties, require his surrender, provision is made to surrender him. Now, suppose a Treaty with England, or France, contained stipulations of this sort, and a murder in the second degree was committed by one of our citizens against another in England, or France; he escapes, and arrives in our State, and under the opinion of the Court, is tried for this offence in the General Court, and sentenced to the Penitentiary for 18 years ; a demand is made by the King of England or Prance for the condemned citizen. According to the 4th section, he must be surrendered, but according to the construction of the 7th, he has been legally convicted. Here is an inconsistency, which is condemned by the *rule laid down, and it follows, that the construction of the 7th section must be wrong But the two sections can be reconciled, and effect given to both. After the Legislature had used the terms, all high treasons, misprisions, and concealments of high treasons, and other offences against the Commonwealth, they either thought that they had used too mild a term, or that that *196 term (offences) might be construed offences of the same nature and kind as those enumerated, and in either case, did not so clearly embrace felonies by citizen against citizen, and therefore knowing that on the Chesapeake Bay, collisions and depredations were likely to happen, and having in the Compact with Maryland, provided against all other collisions and depredations, from abundance of caution added in the same sentence, (for it is not a distinct, or different sentence,) “felonies committed by citizen against citizen.”
Upon the whole, we are of opinion, that originally the General Court had no Common Law jurisdiction on the Chesapeake Bay, such jurisdiction being confided to the Courts of Admiralty : that the modification of these Courts in 1779, and the jurisdiction over murder and piracy on the high seas being transferred to the General Government, and the general jurisdiction of the General Court, before 1786, having been distributed amongst the Courts of Assize, (and it is immaterial whether they were carried into effect or not,) and the Compact with Maryland, requiring some Tribunal to be erected for the'trial of offences on the Bay, the Legislature felt itself bound to transfer the jurisdiction of those offences beyond the reach of the ordinary Courts of Common Law, to the General Court. --The Chesapeake Bay, I apprehend, does not belong to the body of any county, and as a proof of this fact, we refer to the Law authorising the Sheriffs of the adjacent counties to serve process on it. If the Bay had been within the body of a county, the Law would have been useless ; and therefore the conclusion is inevitable, that it is not comprehended within the body of any county, and consequently, that no District Court had, or Circuit has, any jurisdiction on it.
We are then of opinion, that this Court has no jurisdiction over a felony committed in another State; but the majority being of a different opinion, the prisoner is condemned ; and I will now proceed to pronounce his sentence, which is, that he be taken from hence to the place from whence he came, and from thence to the Public Jail and '^Penitentiary-house, to be there confined for five years ; one twelfth part of which he is to be confined in the solitary cells, &c.

 Stat. 13 Rich. 2.

 33 Hen. 8, ch. 23; 35 Do. ch. 2 ; 1 Hale’s H. P. C. 283 ; 1 East's Crown Law, 369.

 1 Rev. Code of 1792, ch. 186, § 5.

 1 Rev. Code of 1819, ch. 158, p. 583 ; Ibid, ch. 106, § 17 & 18, p. 399.

 3 Hen. Stat. at Large, 178.

 See Cay’s Abridgment, title “ Piracy.”

 1748, ch. 12, § 8.

 See the Law in the Chancellor’s Revisal.

 3 Hale’s H. P. C. 12-15.

 3 Tucker’s Black. Appendix A. p. 16.

 1 Rev. Code of 1819, ch. 162.